W. J. JOHNSTON CO., Limited, v. ELECTRIC AGE PUB. CO.

(*Supreme Court, General Term, First Department.*  May 15, 1891.)

TRADE-MARKS—INJUNCTION.

In 1891 plaintiff was the publisher of a newspaper styled "The Electrical World." In 1890 defendant published a newspaper devoted to the same subject called the "Electric Age." Plaintiff's title-page consisted of the name of the paper, combined with designs of electrical appliances and structures printed in colors. In 1891 defendant changed the name of its paper to that of "The Electrical Age," and adopted a title-page similar in general to that of plaintiff, but having points of striking diversity, and printed in and upon other and different colors. *Held,* that the facts shown were not sufficient to justify an injunction upon the ground that purchasers would be induced to purchase defendant's paper instead of plaintiff's by reason of their similarity of appearance.

Appeal from special term.

Action by the W. J. Johnston Company, Limited, against the Electric Age Publishing Company.  From an order denying a motion for an injunction plaintiff appeals.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Thos. J. Keigharn,* for appellant.  *John Henry Hull,* for respondent.

DANIELS, J.  The plaintiff is the publisher of a newspaper devoted to the examination of electrical subjects under the name of "The Electrical World."

The name has been combined with electrical structures and devices to form and exhibit its title-page. This was finally adopted from, and by way of improvement upon, a preceding publication of the plaintiff, and likewise devoted to the consideration and discussion of electrical intelligence. The defendant has been the publisher of another newspaper devoted to the same subjects, and its title-page has been changed from that which characterized and identified it prior to the present year. Early in 1891 it was designated by the name of "The Electrical Age," instead of "The Electric Age," which was previously the name given to it. When this change was made in the early part of 1891, other structures and devices were combined with the name, producing a general resemblance to the title-page of the plaintiff's newspaper, but still differing in the location of the objects, and printed in and upon other and different colors. While there are points of general resemblance, there are also features of striking diversity, rendering the inference at least somewhat uncertain whether the defendant is publishing its newspaper under such a form of title-page as is calculated to produce the belief in the minds of subscribers or purchasers that the defendant's is the paper of the plaintiff. If that could, upon the affidavits and exhibits, be concluded to be the fact, then the case would be one for an injunction, for that would be a violation of the plaintiff's rights, which no court could permit to be successfully devised and followed. *American Grocer Pub. Co.* v. *Grocer Pub. Co.,* 25 Hun, 398; *Koehler* v. *Sanders,* 122 N. Y. 65, 72-74, 25 N. E. Rep. 235; *Vulcan* v. *Myers,* 11 N. Y. Supp. 663. But the conclusion that subscribers or purchasers will be deceived by the appearance of the frontispiece and title of the defendant's newspaper into the belief that it is in fact the plaintiff's publication has not been so certainly sustained as to present a case for an injunction during the pendency of the action. It is not intended to be intimated that after a full hearing of the evidence which may be adduced the plaintiff may not be entitled to succeed, but simply for the present to say that the probability in its favor is not so free from substantial doubt as to entitle it to an injunction before the trial. At no remote period the issue between the parties can be disposed of upon a hearing of their testimony, which will form a more certain criterion for definite and certain action than the complaint and affidavits now before the court; and until then no serious injury can result to the plaintiff by allowing the situation to remain as it now is. The order denying the injunction should be affirmed, with $10 costs and the disbursements on the appeal to abide the final result of the action.